UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

RICHARD CHARLES GENTRY,

        Plaintiff,

v.

CORIZON HEALTH, INC. et al.,

        Defendants.
_____/

Case No. 1:19-cv-258

Honorable Robert J. Jonker

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez,* 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant State of Michigan. Defendants Yarid, Kelley, and Corizon Health, Inc. remain in the case.

## Discussion

    I.    <u>Factual Allegations</u>

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan.

The events about which he complains occurred at that facility. Plaintiff sues the State of Michigan (by and through the MDOC), Corizon Health, Inc. (Corizon), LCF Doctor Ravi D. Yarid, D.O., and LCF Nurse Practitioner (NP) Tammy J. Kelley.

Plaintiff alleges that, on January 10, 2018, he slipped on black ice several times, causing injuries to his neck, right shoulder, and lower back. On March 14, 2018, Defendant Dr. Yarid performed certain manipulations on Plaintiff's back, which Plaintiff believes were unorthodox. During these manipulations, Defendant Yarid forcibly jerked Plaintiff's leg and foot forward while Plaintiff was supine and subsequently thrust his fist into places on Plaintiff's back, using the doctor's full body weight. Plaintiff alleges that the treatment exacerbated his pain. Defendant Yarid assured Plaintiff that his pain would begin to subside. Instead, the pain remained and, after two months, Plaintiff experienced chronic numbness and tingling in his right foot.

Plaintiff alleges that he wrote several medical kites and filed two grievances about his lack of treatment. On July 5, 2018, Plaintiff was called to health care, where he was seen by Defendant Kelley, who informed Plaintiff that Defendant Yarid no longer worked at the facility. After examining Plaintiff, Kelley ordered x-rays and an EMG (electromyogram) on Plaintiff's back. An x-ray was taken, and Plaintiff saw Dr. Dennis Dafris at the Neurology Center in Coldwater for an EMG on August 22, 2018. Dr. Dafris told Plaintiff that he had a pinched nerve in his lower back that had caused nerve damage to his legs and feet. Dr. Dafris advised Plaintiff that he would send instructions about treatment to the prison.

Over the next three months, however, Defendant Kelley never again consulted with Plaintiff about his back injuries. Instead, she repeatedly told him, "We're not discussing that today." (Compl., ECF No. 1, PageID.7.) Plaintiff saw Defendant Kelley for the last time on

September 25, 2018. Neither Kelley nor any other medical provider advised Plaintiff of the results of his EMG test or about a treatment plan.

On October 23, 2018, Plaintiff was called to health services for an annual examination. He met with NP Groff, who informed him that Defendant Kelley no longer worked at the facility. NP Groff informed Plaintiff that she knew nothing about his injury or prior tests and treatment. After Plaintiff explained his history, NP Groff asked if he wanted to try physical therapy.

Plaintiff complains that he later was told that Corizon officials denied physical therapy pending the outcome of an MRI. The MRI was performed on December 10, 2018. Plaintiff then was told that surgery was rejected in favor of physical therapy, which was scheduled to begin on January 16, 2019. However, at the first therapy session, the physical therapist told Plaintiff that he could not do anything about the injuries, though he demonstrated a number of exercises that might alleviate some pain.

On February 10, 2019, NP Groff called Plaintiff on an unrelated matter. When Plaintiff asked about surgery, Groff advised that no request for surgery had been sent but that she was sending a request to the Regional Medical Director for a surgery consultation on the pinched nerve in Plaintiff's back. Plaintiff alleges that he has never been informed of the full results of his EMG or of the recommendations made by the neurologist who conducted it.

Plaintiff alleges that Defendants have been deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment. He seeks injunctive relief in the form of adequate medical treatment, together with compensatory and punitive damages.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

4

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff may not maintain a §1983 action against the State of Michigan or its department, the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under §1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. Therefore, the Court dismisses the State of Michigan and its department, the MDOC.

Upon initial review, the Court concludes that Plaintiff has alleged sufficient facts to state an Eighth Amendment claim against the remaining Defendants.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendant State of Michigan (MDOC) will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's claims against Defendants Yarid, Kelley, and Corizon, Inc. remain in the case.

An order consistent with this opinion will be entered.

Dated:   May 6, 2019  /s/ Robert J. Jonker
ROBERT J. JONKER
CHIEF UNITED STATES DISTRICT JUDGE